**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:14-cr-00321-GMN-NJK |
| | ) | |
| vs. | ) | REPORT & RECOMMENDATION |
| | ) | |
| JUSTIN LOPER, | ) | |
| | ) | (Docket No. 178) |
| Defendant. | ) | |
| _____ | ) | |

This matter was referred to the undersigned Magistrate Judge on Defendant Justin Loper's Motion to Sever. Docket No. 178. The Court has considered Defendant's motion, the United States' response, and Defendant's reply. Docket Nos. 178, 181, 186. The Court has also reviewed, *in camera*, copies of statements that the United States intends to use in evidence at trial in this case.

I.   **BACKGROUND**

On July 29, 2014, a criminal complaint was filed, charging Defendant (hereinafter "Loper") and two co-defendants (hereinafter "Williams" and "Hall") with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951; brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), and 2; and interference with commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2. Docket No. 1.

On September 30, 2014, Loper, Williams, and Hall were indicted on one count of conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951; two counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), and 2; and two counts of interference with commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2. Docket No. 27.

On October 27, 2014, the Court issued an order regarding pretrial motions, which set the pretrial

1  motions deadline for November 10, 2014.[1]  Docket No. 40.  That motions deadline has never been

2  extended.  *See* Docket.

3         On May 25, 2016, a Superseding Indictment was issued as to Loper, Hall, and Williams.

4  Docket No. 167.  Loper, Hall, and Williams were thus indicted on one count of conspiracy to interfere

5  with commerce by robbery, in violation of 18 U.S.C. § 1951(a); six counts of interference with

6  commerce by robbery, in violation of 18 U.S.C. § 1951 and 2; and six counts of brandishing a firearm

7  in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii).  Docket No.

8  167.  While the initial indictment was based only on events that allegedly occurred on July 13, 2014,

9  the Superseding Indictment was based on events that allegedly occurred on July 13, 2014, and June 14-

10  15, 2014.

11         On June 6, 2016, Loper moved to dismiss the counts in the Superseding Indictment.  Docket No.

12  177.  The United States responded to Loper's motion, and Loper replied to the United States' response.

13  Docket Nos. 179, 180.  On July 7, 2016, the undersigned issued a Report and Recommendation that

14  Loper's motion to dismiss be denied.  Docket No. 192.

15         On June 9, 2016, Loper moved to sever.  Docket No. 178.  As noted above, the deadline for

16  pretrial motions was November 10, 2014.

17         On July 8, 2016, the undersigned ordered the United States to provide, *in camera*, to the

18  undersigned's chambers both unredacted and redacted copies of each co-defendant's statement that it

19  intends to use in evidence at trial on the instant matter, by July 13, 2016.  Docket No. 196.  On July 28,

20  2016, the undersigned ordered that the United States comply in full with the Court's July 8, 2016 Order.

21  Docket No. 212.  The United States then complied with the Order.

22         Loper first argues that there is "good cause" for his untimely motion under Federal Rule of

23  Criminal Procedure (hereinafter "Fed. R. Crim. P.") 12(c)(3) because the Superseding Indictment,

24  which was issued after the pretrial motions deadline expired, changed the nature of this case.  Docket

25  No. 178 at 4.  Therefore, Loper argues, he should have the opportunity to respond to his changed

26  _____

27      [1] The order states that pretrial motions are due thirty days from the date of the order, which is

28  November 8, 2014.  As November 8, 2014 was a Saturday, however, motions would have been due on
Monday, November 10, 2014.

1    position.  *Id.* at 3-4.

2           Second, Loper argues that severance is necessary under Fed. R. Crim. P. 14 because  "there is a

3    serious risk that a joint trial would prejudice a specific trial right of one of the defendants, or prevent

4    the jury from making a reliable judgment about guilt or innocence."  *Id.* at 4 (citing *Zafiro v. United*

5    *States*, 506 U.S. 534, 539 (1993)).  Loper cites *Bruton v. United States*, 391 U.S. 123 (1968) and its

6    progeny for the proposition that the specific trial right in danger is his Sixth Amendment right to

7    confrontation.  Docket No. 178 at 6-8.  Loper further argues that redacting information from his co-

8    defendants' confessions, rather than severing his trial from theirs, is inadequate to protect this right

9    because "numerous direct references to Loper and inferences to Loper through pronouns in Williams'

10   statement will lead the jury to assume that Williams was talking about Loper, even if this Court ordered

11   redaction."  *Id.* at 7.  Loper also argues that Hall's statements are prejudicial when considered in

12   conjunction with Williams' statements.  *Id.*

13          The United States responds, first, that no "good cause" exists for Loper's untimely filing under

14   Fed. R. Crim. P. 12(c)(3) because the United States provided Loper with the statements that form the

15   basis of the counts in the Superseding Indictment, and with discovery for those additional counts, well

16   before the pretrial motion filing deadline.  Docket No. 181 at 1-2.  Essentially, the United States argues

17   that Loper was on notice that such charges might arise because he knew of the pertinent evidence before

18   the pretrial motions deadline expired.  *Id.*

19          Second, the United States responds that the crimes charged are appropriate for joinder under

20   Fed. R. Crim. P. 8(b).  *Id.* at 2.  Additionally, the United States contends that in this Circuit, co-

21   defendants who are jointly charged are *prima facie* to be jointly tried.  *Id.* at 3.  Finally, the United

22   States asserts that it would be premature to sever Loper's case based on potential *Bruton* issues because

23   the parties can avoid potential issues through limiting instructions and redaction; that Loper's argument

24   that redaction is insufficient to protect his rights is unavailing; and that severance is only proper under

25   Fed. R. Crim. P. 14 when a defendant demonstrates prejudice, which it contends Loper has not done.

26   *Id.* at 4-6.

27          Regarding timeliness, Loper replies that the additional charges in the Superseding Indictment

28   constitute good cause under Fed. R. Crim. P. 12(c)(3).  Docket No. 186 at 2.  He also contends that

3

1  accepting the United States' arguments about timeliness would give the United States improper

2  incentive to add additional charges after the pretrial motions deadline has expired in future cases. *Id.* at

3  2-3.  Regarding severance, Loper generally argues that the Court can only guarantee that his

4  constitutional rights are protected by granting his motion.  *Id.*[2]  Loper emphasizes the distinction

5  between the first two robberies charged and the additional counts in the Superseding Indictment.  *Id.* at

6  3-4.

7  **II.    ANALYSIS**

8      **A.    Timeliness**

9      Under Fed. R. Crim. P. 12(c)(1), a court may set a deadline for the parties to make pretrial

10  motions.  Under Fed. R. Crim. P. 12(c)(3), a motion filed past the pretrial motions deadline is untimely.

11  However, "a court may consider the defense, objection, or request if the party shows good cause."  Fed.

12  R. Crim. P. 12(c)(3).

13      The Court set the pretrial motions deadline in the instant case for November 10, 2014.  *See*

14  Docket No. 40.  Loper filed his motion to sever on June 9, 2016, well past that deadline.  Docket No.

15  178.  Therefore, the Court must first determine whether "good cause" for the delay exists under Fed. R.

16  Crim. P. 12(c)(3).

17      In this case, it is true that Loper was on notice of the evidence that the United States intended to

18  use well before the pretrial motions deadline expired. However, the Superseding Indictment itself was

19  issued well after that deadline.  Moreover, the Superseding Indictment substantially changed the case,

20  as it added several new charges against all of the defendants.  Additionally, Loper responded promptly

21  to the changes, filing this motion roughly two weeks after the issuance of the Superseding Indictment.

22  The Court finds that Loper has demonstrated "good cause" for filing his motion to sever past the

23  pretrial motions deadline.  The Court has therefore considered, and will address below, the merits of

24  Loper's argument.

25

26      [2] Loper's Reply also introduces an entirely new argument, relating to a distinct line of cases, that

27  Loper and Williams will have "'mutually exclusive' and 'irreconcilable defenses' at trial," which will
cause problems.  *Id.* at 3.  The Court will not address this argument.  *See* Local Rule 12-1(a)(3) (reply

28  briefs in criminal cases must only address arguments made in the response).

**B.**   <u>**Severance**</u>

Fed. R. Crim. P. 14 gives a trial judge the discretion to order a severance "when it appears that a defendant may be significantly prejudiced by a joint trial with his co[-]defendants." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1987).  Additionally, "[g]enerally speaking, defendants jointly charged are to be jointly tried."  *Id.*  A party seeking reversal of a decision denying severance under Rule 14 must prove "'clear,' 'manifest,' or 'undue' prejudice from the joint trial."  *Id.*  Moreover, "such a party . . . must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant." *Id.*  This is a high burden because "the prejudice must have been of such magnitude that the defendant was denied a fair trial." *Id.*

In this case, Loper argues that the Court should exercise its discretion to order severance under Fed. R. Crim. P. 14 because he believes that failure to sever will violate his Sixth Amendment right to confrontation.  *Bruton*, 391 U.S. 123, and its progeny govern this issue.

In *Bruton*, 391 U.S. at 136-37, the Supreme Court held that a lower court violated one co-defendant's Sixth Amendment right to confront the witnesses against him when it admitted the other co-defendant's confession, which implicated the first co-defendant, into evidence.  The Court in *Bruton* found a constitutional violation even though the lower court had provided a clear limiting instruction to the jury.  *Id.*

In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court clarified the *Bruton* rule.  In that case, a co-defendant's confession was redacted to eliminate all reference to another co-defendant. *Id.* at 211.  The Court held that "the Confrontation Clause is not violated by the admission of a nontestifying co[-]defendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211.

The Court subsequently limited *Richardson* in *Gray v. Maryland*, 523 U.S. 195 (1998).  In *Gray*, 523 U.S. at 188, one co-defendant confessed, naming and incriminating the other co-defendant.

The prosecution redacted the confession by substituting a blank space or the word "deleted" for the co-defendant's name, and the court also used appropriate limiting instructions. *Id.* at 188-89. The Court held that *Bruton*'s protective rule applies under such circumstances. *Id.* at 188. The Court in *Gray* emphasized the fact that this type of redaction was insufficient because the resulting document too "closely resemble[d] *Bruton*'s unredacted statements" by calling attention to the deleted name and making the redaction obvious. *Id.* at 192. The Court further noted that "*Richardson* placed outside the scope of *Bruton*'s rule those statements that incriminate inferentially," and that it is "the *kind* of, not the simple *fact* of, inference" that matters. *Id.* at 195-96.

Subsequent cases in this Circuit have made clear the fact that *Bruton* does not apply simply because there are general references to other individuals in a defendant's confession. *See, e.g., U.S. v. Peterson*, 140 F.3d 819, 821-22 (9th Cir. 1998) (discussing *Gray,* 523 U.S. 195); *United States v. Hoac*, 990 F.2d 1099, 1107 (9th Cir. 1993) ("Because 'Anom' was never revealed to the jury to be Chan's nickname and was immediately corrected and replaced with the vague plural 'individuals,' and because the redaction did not invite the jury to 'fill in the blanks,' Hoac's extrajudicial statement did not facially incriminate Chan; rather it could become incriminating only when linked with other evidence introduced at trial.") However, the Ninth Circuit has noted that "[t]he combination of an obviously redacted statement with language implying the existence of a third party reasonably could lead the jury to conclude that the unnamed third person must be the co[-]defendant before them." *United States v. Parks*, F.3d 1133, 1139 (9th Cir. 2002).

In this case, the Court has examined both the redacted and unredacted statements of all three co-defendants pursuant to Fed. R. Crim. P. 14(b). The unredacted versions of Hall's and Williams' statements to the police include very few explicit references to Loper. Rather, for the most part the statements include general references to "we," "us," "they," or "them." At most, these pronouns suggest the involvement of an unidentified number of perpetrators. Therefore, redaction and a proper limiting instruction are sufficient to protect Loper's rights.

The United States has redacted substantial portions of the documents at issue rather than conspicuously removing or altering one individual's name in certain places. As a result, the documents are not obviously redacted and the United States is not inviting the jury to fill in the blanks. For the

most part, there are no obvious inferences of the kind prohibited by *Gray*.  However, the United States'

redacted documents do, in places, include the specific number of perpetrators.  Additionally, Hall's

redacted statement includes Loper's first name.  The inclusion of these two pieces of information could

present a problem under *Gray*, and must be omitted.  First, the United States must redact the questions

and answers about Hall's relationships with Williams and Loper in Hall's statement.[3] Second, the

United States must remove all sentences that refer to the number of perpetrators.[4]

---

[3] Specifically, the following exchange must be redacted:

"Q:     Uh-huh.  Now when you - how long 'ave you known Justin?

A:      Like since middle school, high school, adult ed.

Q:      And then, um, what about the other guy?  What's his first name?

A:      Uh - uh, Keith.

Q:      Keith Williams, rights?

A:      Yeah, been knowin' him si- for about seven years, seven, eight, years now."  Government ("Gov't") Exhibit ("Exh.") 16 at 2.

[4] Specifically, the following must be redacted or altered, as noted:

First, redact:

"Q:     I mean all three of you are in the same boat."  Gov't Exh. 12 at 50.

Second, redact:

"Q:     How – okay.  Out of the $2,000, how much did you get?  Was it three ways, four ways, two ways or was it just matter, uh . . .

A:      Doesn't matter.

Q:      All right.  So how, like, out of the $2,000, if you were gonna approximate, how much did you get?

A:      I'd say $700.

JG:     All right.  So basically an even split.

A:      Yeah."  Gov't Exh. 14 at 20-21.

Third, redact:

"JG:    And then you and the o- and the other two went in there."  Gov't Exh. 14 at 22.

Fourth, redact:

"A:     (Unintelligible).  Especially when it's three people."  Gov't Exh. 14 at 37.

Fifth, redact:

"JG:    There's three of you guys" and "But on that one there was only two of you all.  Why did you go from three to two?" and

JG:     So when you got three – three – three – three – three, and then all of a sudden bam, you got two."  Gov't Exh. 14 at 60.

Sixth, redact:

"JG:    Where three of you guys went in" and "Again with just you two.  So it went from three to two" and "So I'm just curious why did you guys go from three to two?  Did somebody,

7

**IT IS RECOMMENDED** that Defendant's motion to sever be DENIED because his Constitutional right to confrontation can be adequately protected by redaction, provided that the United States further redact the co-defendants' statements as outlined above.

Dated this 19th day of August, 2016.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

---

like, say they didn't want to be involved or what happened?  You don't gotta say names, just gotta tell me what the scenario was.  'Cause it's killing me, dude.  It's like, 'Why?'

A:     Just, man, sometimes – some – it's just like some – sometimes you get a bad feeling and you be, like, 'No, I'm cool.'

JG:    Okay.  All right." and

"JG:    I respect that.  One just wasn't down."  Gov't Exh. 14 at 63-64.

Seventh, change:

"Q: . . . Three – three black guys putting masks on and someone rolls by and sees it" to "Black guys putting on masks and someone rolls by and sees it."  Gov't Exh. 14 at 67.